UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAWZIYA AHMED MUSAH
DOLLAH,

                         Plaintiff,

          – against –

SECRETARY OF DEFENSE *and*
SECRETARY OF THE NAVY,

                         Defendants.

**OPINION & ORDER**

24 Civ. 9166 (ER)

RAMOS, D.J.:

Fawziya Ahmed Musah Dollah brings suit against the Secretary of Defense and the Secretary of the Navy (the "Government"), alleging that the Navy "intentionally and systematically delayed" her application for enlistment to the Navy on the basis of her HIV status. Second Amended Complaint, Doc. 28 ¶¶ 1, 28 (hereinafter "SAC"). Dollah seeks monetary damages and "any other reasonable relief" under the Rehabilitation Act, 29 U.S.C. § 791. SAC at 2, 6. Before the Court is the Government's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 32 at 6. For the reasons set forth below, the motion to dismiss pursuant to Rule 12(b)(1) is GRANTED.

I.     BACKGROUND

       A.  Factual Background[1]

On March 18, 2024, Dollah began the recruitment process with the U.S. Navy at a Navy Recruiting Station in the Bronx, New York. SAC ¶ 5; Doc. 1 at 4. At Navy Officer Henry Leon's direction, Dollah visited the Military Entrance Processing Station

---

[1] The following facts are drawn from allegations in the SAC, which the Court accepts as true for the purposes of this motion. *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In addition, when a *pro se* plaintiff's opposition papers raise new allegations that are "consistent with the allegations contained in the complaint, they may be read as supplements to the pleadings." *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) (citation modified). The Court also notes that the SAC includes several icons that suggest that Dollah attempted to attach additional documents to the SAC. *See* SAC ¶¶ 8, 33–36. But because these documents cannot be opened, the Court cannot review or consider them in this motion. However, the Court considers any information and allegations that Dollah presents in her papers regarding these documents, so long as they are consistent with the SAC.

("MEPS"), renewed her Social Security card, and provided various documents, including her birth certificate, school transcript, and a proof of religion letter as part of her request for a religious accommodation to cover her head during boot camp.[2]  SAC ¶¶ 5–6. Dollah also took and passed the Armed Services Vocational Aptitude Battery ("ASVAB") test with the required score of 31 in April 2024.  Doc. 36 at 8.  Throughout the recruitment process, Dollah experienced numerous issues with Officer Henry, as he repeatedly lost important documents or provided no update on their approval.  SAC ¶¶ 2, 6, 17.  On July 28, 2024, Dollah filed a complaint with the Naval Inspector General, specifically citing the lack of response on the status of her religious accommodation.  *Id.* ¶ 6.  Sometime after she filed this complaint, Officer Henry called Dollah and asked her whether she had complained about him to anyone.  *Id.*  When Dollah confirmed that she had "because the process [was] taking too long," Officer Henry responded that he had not "receive[d] anything from the office."  *Id.*

Sometime later, Officer Henry called Dollah again and instructed her to continue the recruitment process without religious approval.  *Id.* ¶ 7.  He told her that seeking a religious accommodation after graduation would be "much easier" than doing so during the recruitment process.  *Id.*  When Dollah agreed, Officer Henry scheduled Dollah to take another ASVAB test, which she took on August 12, 2024, and received a passing score of 54.  *Id.*

On August 14, 2024, Dollah received a physical examination at MEPS.  *Id.*  While Dollah passed the initial examinations, the doctor noted that HIV was referenced in her medical records.  *Id.*  Dollah reported to the doctor that she had been undetectable since 2014.  *Id.*  As Dollah was waiting for the results of her blood test, Officer Henry explained that, due to her "medical report status," certain officers were seeking a waiver

---

[2]  The Court notes that Officer Henry Leon is referred to by different names in the SAC, including Officer Henry Leon, Petty Officer Leon Henry, Henry Leon, Henry, and Officer Leon.  SAC ¶¶ 2, 6, 13, 15.  The Government refers to him as "Officer Henry" in its submissions.  *See* Doc. 32 at 8–9.  For clarity, the Court will also refer to him as "Officer Henry."

that would allow Dollah to continue her enlistment process; a few hours later, Officer Henry indicated that the waiver was denied and instructed Dollah to wait for her blood test results. *Id.*

Sometime later, Officer Henry requested that Dollah return to the Navy Recruiting Station to receive a letter with her results. *Id.* ¶ 9. The letter requested that Dollah return to MEPS to discuss their findings and an "optional decision." *Id.* Officer Reyes, Officer Henry's supervisor, informed Dollah that it was "baseless going back to the MEPS, since you already knew and were aware of the issue." *Id.* Regardless, Dollah decided that she wanted to hear the officers' assessment of her health status. *Id.*

On August 22, 2024, Dollah returned to MEPS and met with three officers. *Id.* ¶ 10. Dollah told the officers that she was aware of her HIV status and had been undetectable since 2014. *Id.* Dollah also recently confirmed with her primary care provider that she was undetectable, and she informed the officers that she had test results and other necessary documentation to demonstrate this. *Id.* The officers asked for the documents, but Dollah responded, "I don't have them with me right now because you did not request a proof letter of my health from my PCP." *Id.* The officers explained how HIV status was a concern during recruitment because the Navy had an obligation to "ensure that such a person always has access to medication," and "not all locations have access." *Id.* The officers instructed her to have more bloodwork done and told her that they would contact her when they had the results. *Id.* As one officer took her to get her blood drawn, he also explained that there were "many other departments within the Navy that [she] can join, regardless of [her] health status." *Id.* On August 30, 2024, her blood test results showed that she had "contracted the HIV antibody," and Dollah waited for a status update on her enlistment. *Id.* ¶ 11.

On November 19, 2024, the Naval Inspector General responded to her July 2024 complaint and assigned Officer Brian McNamee to the investigation. *Id.* ¶ 12. One day later, on November 20, 2024, Officer Henry called Dollah and asked her if she had filed a

complaint about him. *Id.* ¶¶ 13, 15. When she confirmed that she had, he informed Dollah that she could not join the Navy due to the physical examination report from MEPS. *Id.* ¶ 15. The next day, Dollah emailed Officer McNamee her physical examination report from MEPS and explained that the report did not specify whether she was qualified to enlist.[3] *Id.* Dollah informed Officer McNamee that she was waiting for the waiver of her report and that she expected to be offered different options to serve in the Navy or other branches. *Id.* Dollah also detailed her conversation with Officer Henry where she confirmed that she had filed a complaint and he informed her of her disqualification. *Id.*

Later that day, Officer McNamee responded to Dollah's email and stated that "the Inspector General has no control/influence/ or decision-making authority over medical requirements and eligibility" and that if she was denied entry by Officer Henry, "there is nothing [his] office can do to change that." *Id.* Dollah filed the instant action on November 27, 2024. *Id.* ¶ 16.

On December 5, 2024, during a routine medical check-up, Dollah's HIV status changed to detectable positive. *Id.* ¶ 20. Also on December 5, 2024, Officer Henry called Dollah again to see if she was still interested in joining the Navy. *Id.* ¶ 17. He also asked if she had discussed their last conversation with anyone. *Id.* When Dollah responded that she had not, Officer Henry added his supervisor, Officer Gidey, to the call. *Id.* Officer Gidey did not discuss her purported disqualification, and he instead apologized for the delay and explained that the Navy Recruiting Station was awaiting receipt of her medical report and a letter from her primary care provider. *Id.* Dollah indicated that she had the requested documentation and Officer Henry indicated that she should submit it on December 8, 2024. *Id.*

---

[3] The SAC alleges that Officer Henry called her on November 20, 2025. However, given the date of the email, the reference to "yesterday" in her email, and previous allegation that the call occurred in 2024, the Court understands the 2025 date in the SAC to be a typo.

Dollah returned to the Navy Recruiting Station on December 9, 2024, to submit the medical letter and report from her primary care physician. *Id.* ¶ 18. During the visit, Officer Henry claimed he was unable to process the paperwork due to issues with his computer, and he passed the documents off to Officer Herper for assistance. *Id.* At Officer Herper's station, Officer Herper asked Dollah, "Do you know that there is no guarantee that this will work, and do you know that medications are not allowed in the bootcamp?" *Id.* Dollah did not respond to the first question and responded "I don't know" to the second question. *Id.* During that same visit, Officer Henry discussed a "family program form" that the Navy had previously rejected as incomplete. *Id.* ¶ 19. Although, at first, Officer Henry claimed that the form was rejected due to Dollah's failure to sign the form, upon further inspection he realized that the issue with the form was his own failure to sign it. *Id.* Notwithstanding this failure, Officer Henry chose not to sign or date the form. *Id.*

On January 13, 2025, MEPS requested additional bloodwork and another letter from Dollah's primary care physician.[4] *Id.* ¶ 20. Officers, including Officer Gidey and a supervisor, Officer Felicia Ward, called "many times" and insisted that the paperwork be submitted "quickly" and before Dollah's forty-second birthday. *Id.* However, Dollah "purposely" delayed her test to ensure that she was "well-prepared" after her previous positive results in December. *Id.* On February 6, 2025, Dollah was tested again, and the result was that she was undetectable for HIV. *Id.* Dollah submitted the test results the same day she received them, on February 10, 2025. *Id.*

On February 28, 2025, Officer Gidey called Dollah to inform her that she was disqualified due to her age. *Id.* ¶ 21. Officer Gidey also, however, promised to advocate for Dollah's applications with other officers, and to let her know about the result of his efforts. *Id.*

---

[4] Although the SAC alleges that this occurred on January 13, 2024, in context, the Court understands this to be a typo and that the correct date is January 13, 2025.

Sometime later, Assistant U.S. Attorney Danielle Marryshow of the United States Attorney's Office for the Southern District of New York, advised Dollah to speak with her recruiter. *Id.* ¶ 22.

On May 6, 2025, Dollah returned to the Navy Recruiting Station to speak with the officers and receive proof of her document submissions. *Id.* ¶ 23. Dollah asked Officer Henry to see Officer Ward, but Officer Herper intervened and asked, "Is it about what Henry told you? You are disqualified due to your health status. And now you are aging." *Id.* ¶ 24. Dollah answered that she was not there to discuss her disqualification and that she was "ordered" to speak with Officer Henry. *Id.* Officer Herper asked who sent her, and Dollah responded, "I will not tell you." *Id.* Dollah began to write down Officer Herper's name from his badge, but he became furious and stated, "You didn't ask my permission before writing my name." *Id.* In the presence of two army officers, Officer Herper began shouting at Dollah to "Get out, get out, get out of here!" *Id.*

Officer Henry then informed Dollah that Officer Ward was on leave until May 27, 2025. *Id.* ¶ 25. Officer Henry confirmed that Dollah submitted the first blood test that he and his supervisor had requested. *Id.* Dollah asked for a "proof statement" of her submission, but Officer Henry stated that the Navy did not maintain a chain of custody for her documents. *Id.* He confirmed the documents were submitted to MEPS, and he offered to return them to Dollah. *Id.* Dollah disagreed and again demanded a "proof statement." *Id.* Dollah also told Officer Henry that she was not there of her own will and that "[t]he Assistant US Attorney told me to see you because she said she understood that I owe you a medical report." *Id.* However, Officer Herper interrupted, stating "Didn't you hear what Henry said? Why are you harassing him? There is nothing he can give you." *Id.* Dollah requested a final time, but Officer Henry denied her request, and she left the office. *Id.*

After this incident, Dollah followed up with Officer Ward, Officer Henry, and Officer Gidey. *Id.* ¶ 27. Officer Ward indicated that she was unfamiliar with Dollah's

recruitment process. *Id.*  However, Officer Ward confirmed that Dollah submitted her second bloodwork form and emailed her the copy on file. *Id.* ¶ 26.  Officer Henry stated he was unaware of any information regarding her second medical report. *Id.* ¶ 27.  Officer Gidey was also unaware of the issues Dollah experienced throughout her recruitment process, and he was merely instructed to "come and help fix the problem." *Id.*

### B.  Procedural History

Dollah filed this action on November 27, 2024.  Doc. 1.  On January 21, 2025, the Court granted Dollah leave to proceed *in forma pauperis*.  Doc. 5.  On January 24, 2025, the Court issued an order of service which dismissed the Navy Recruiting Station and Officer Henry, and replaced the defendants with the Secretary of Defense and the Secretary of the Navy.  *See* Doc 7 at 1.  The order stated that Dollah did not identify a cause of action or the relief sought.  *Id*.  The order further specified that Dollah "may not assert claims under the Americans with Disabilities Act of 1990, the Rehabilitation Act, or other federal antidiscrimination statutes because those remedies do not apply to uniformed positions of the military or to civilian applicants for those positions."  *See id.* at 2 n.1.  Instead, the Court liberally construed her complaint as asserting claims under the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act (the "APA").  *See id.* at 1.

During a pre-motion conference on June 27, 2025, the Court granted Dollah leave to amend her complaint.  The complaint was first amended on August 23, 2025, Doc. 24, and again on September 4, 2025, Doc. 28.  In the SAC, Dollah again asserts a claim under the Rehabilitation Act and requests monetary damages.  SAC at 2, 6.  Dollah also alleges that Officer Henry intentionally delayed her application due to her HIV status until she aged out of enlistment. *Id.* ¶¶ 1, 28.  Dollah claims that Officer Henry did so by mismanaging her documentation, delaying her appointments with MEPS, telling her that she was ineligible to serve due to her health status, and falsely claiming that he could not

proceed with her recruitment because the Navy had not received her second medical report. *Id.* ¶¶ 28–29.

On December 5, 2025, the Government filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Doc. 31; Doc. 32. In sum, the Government argues that the Court lacks subject matter jurisdiction, that Dollah lacks standing because her claims are not redressable, and that Dollah is unable to assert a claim under either the APA or the Fifth Amendment. Doc. 32 at 6. Dollah responded in opposition to the motion on January 17, 2026. Doc. 36. She also requested further leave to amend her complaint. *Id.* at 1. On January 26, 2026, the Government filed a reply in further support of the motion. Doc. 37.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(1)

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject-matter jurisdiction as a "threshold question"). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (internal quotation marks omitted). However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action. *Selevan v. New York Thruway Authority*, 584 F.3d 82, 89 (2d Cir. 2009);

*see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and it is the burden of the plaintiff to "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.") (internal quotation marks omitted).

In resolving a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings. *Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).

### B. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest

9

regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . .").

## III.   DISCUSSION

The Government moves to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6). The Court analyzes the claims as they appear in the SAC under the Rehabilitation Act, but the Court also continues to "liberally construe[] this action as seeking injunctive relief under the Fifth Amendment and the APA." Doc. 7 at 2.

### A.  Rule 12(b)(1)

#### 1.  Rehabilitation Act

The Government argues that this Court does not have jurisdiction over Dollah's Rehabilitation Act claim. *See* Doc. 32 at 11–12. The Court has already addressed this issue in the order of service. *See* Doc. 7. Dollah cannot assert claims under the Rehabilitation Act because the Act does not apply to civilian applicants or against uniformed positions in the military. *See id.* at 2 n.1; *see also Pilchman v. Department of Defense,* 154 F. Supp. 2d 415, 420 (E.D.N.Y 2001) (finding that remedies under the Americans with Disabilities Act or other federal or state discrimination statutes do not apply to civilian applicants for the military); *Coffman v. State of Michigan*, 120 F.3d 57, 59 (6th Cir. 1997) (holding that "claims under the Rehabilitation Act may not be asserted by uniformed members of the armed forces"), *cited with approval in Baldwin v. U.S. Army*, 223 F.3d 100, 101 (2d Cir. 2000); *Smith v. Christian*, 763 F.2d 1322, 1325 (11th Cir. 1985) (holding that a Naval applicant's discrimination claims could not be addressed

10

under the Rehabilitation Act).  Indeed, in the analogous Title VII context, the Second Circuit has "refuse[d] to extend a judicial remedy for alleged discrimination in civilian employment to the dissimilar employment context of the military."  *Roper v. Department of the Army*, 832 F.2d 247, 248 (2d Cir. 1987).  Dollah was given leave to amend her complaint, but she failed to assert a cognizable claim.  Thus, the Court lacks subject matter jurisdiction over the claim.

   2.  *Relief Under the Fifth Amendment & APA*

   The Government argues that Dollah lacks subject matter jurisdiction for any claims pursuant to the Fifth Amendment or APA because her claims are not redressable.  *See* Doc. 32 at 12–14.  In the SAC, Dollah requests monetary damages "or any other reasonable relief."  Doc. 28 at 6.  Article III of the Constitution limits federal judicial power to the resolution of cases and controversies.  U.S. Const. art. III, § 2.  To satisfy this requirement: "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must likely to be redressed by a favorable decision."  *Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015) (quoting *Cooper v. U.S. Postal Service*, 577 F.3d 479, 489 (2d Cir. 2009)).  However, the harm and injury that Dollah alleges cannot be redressed by monetary damages or other forms of relief.

   First, Dollah's claims pursuant to the Fifth Amendment or the APA are not redressable by money damages.  Indeed, as a general matter, damages are not available under the APA.  *Ward v. Brown,* 22 F.3d 516, 520 (2d Cir. 1994) ("[T]he APA does not waive sovereign immunity for money damages claims.").  And, as stated in the order of service, any constitutional claims Dollah may be asserting for money damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), would be barred by the doctrine of sovereign immunity.  *See* Doc. 7 at 2 n.1 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)); *see also Baldwin*, 223 F.3d at

11

101 ("[S]ince Congress—which has plenary authority over military life—had not waived sovereign immunity and itself provided a *Bivens*-type civil action for uniformed members of the military, it would be inappropriate for the judicial branch to extend such a remedy to them."). As Dollah cannot seek monetary damages under the APA or Fifth Amendment, another form of relief must be applicable to redress her injury and grant her standing.

Dollah also requests "any other reasonable relief," which the Court liberally construes to include a request for injunctive relief. *See* Doc. 28 at 6. The Government argues that relief in the form of enlistment or reassessment of her enlistment application is no longer available because she is beyond the age for eligibility. *See* Doc. 32 at 12–14. Under the doctrine of mootness, a plaintiff needs to have a "personal stake" in the outcome of their action, and this "personal stake" must be "extant at all stages of review, not merely at the time the complaint is filed." *See Stagg, P.C. v. U.S. Department of State,* 983 F.3d 589, 601 (2d Cir. 2020) (quoting *United States v. Sanchez-Gomez,* 584 U.S. 381, 385 (2018)). "When the plaintiff no longer has a legally cognizable interest in the outcome of the action, the case becomes moot and is no longer a 'case' or 'controversy' for the purposes of Article III." *Id.*

Here, Congress has established that the Secretary of the Navy "may accept original enlistments . . . of qualified, effective, and able-bodied persons who are not . . . more than forty-two years of age." 10 U.S.C § 505(a); *see also* 32 C.F.R. § 66.5(c)(3) ("The Secretaries of the Military Departments . . . [e]stablish other Service-specific standards as necessary to implement this part."). And the Secretary, in the exercise of his discretion, has determined that "individuals cannot have reached their 42nd birthday at the time of accession onto active duty (AC) or at the time of being gained or reporting to recruit training (RC)." U.S. Navy Recruiting Command, *Navy Recruiting Manual: Enlisted* (Jan. 30, 2025), Section 2: Age Requirement at 2-17, https://etoolbox.cnrc.navy.mil/assets/instructions/Navy%20Recruiting%20Manual%20-

%20Enlisted.pdf; *see also id.* ("Applicants will not be enlisted if their projected starting date of active duty will cause them to exceed [the] age criteria.").[5]  The Navy reached out to Dollah and informed her that they wanted to process her paperwork before her forty-second birthday, but Dollah intentionally delayed her final blood test and exceeded the age limit before finishing the recruitment process.  As Dollah has now exceeded the age criteria, the Navy can no longer enlist Dollah without violating their recruitment policies, so this form of relief is unavailable to redress her claim.

Moreover, insofar as Dollah seeks to assert an unreasonable delay claim under the APA, that claim is moot because Dollah was rendered a final decision on her application.  Under Section 555(b) of the APA, agencies must, "within a reasonable time," conclude matters presented to them.  5 U.S.C. § 555(b).  Section 706(1) of the APA allows courts to "compel agency action unlawfully held or unreasonably delayed."  5 U.S.C. § 706(1).  The Supreme Court determined that the "only agency action that can be compelled under the APA is action legally required."  *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 63 (2004).  A claim for unreasonable delay under § 706(1) can "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Id.* at 64.

While Dollah argues that her application was "intentionally and systematically" delayed, the Government correctly identifies that this claim is moot.  Doc. 28 ¶ 28; Doc. 32 at 15.  Despite any delays, the Navy ultimately rendered a decision on her application.  As the Navy rendered a final decision, and, as previously argued, the Navy cannot reassess her application and grant her enlistment because of her age, Dollah no longer has an interest or personal stake in the outcome of the action.  Therefore, the Court finds that the claim is moot because the Navy administered Dollah a final decision on her application.  *See, e.g.*, *Saleh v. Pastore*, No. 19 Civ. 11799 (KPF), 2021 WL 1640449, at

---

[5] The Court may take judicial notice of the Navy Recruiting Manual as a public record.  *See Sheiner v. Mayorkas*, No. 21 Civ. 5272 (ER), 2023 WL 2691580, at *1 (S.D.N.Y. Mar. 29, 2023).

*8 (S.D.N.Y. Apr. 27, 2021), *aff'd*, No. 21-1073, 2021 WL 4978574 (2d Cir. Oct. 27, 2021) (dismissing an unreasonable delay claim as moot after an agency rendered a decision on an application); *Altowaiti v. Cissna*, No. 18 Civ. 508 (ER), 2020 WL 2036703, at *4 (S.D.N.Y. Apr. 28, 2020) (same). As the claim for unreasonable delay under the APA is moot, the Court need not assess the merits of the claim and must dismiss it. *See ABC, Inc. v. Stewart,* 360 F.3d 90, 97 (2d Cir. 2004) ("Therefore, under the mootness doctrine, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory opinion." (internal quotations omitted)).

In sum, the Court lacks subject matter jurisdiction over Dollah's claims because it cannot redress any of her alleged injuries. Moreover, even if the Court had subject matter jurisdiction, it appears that the SAC would nonetheless fail to state a claim. Indeed, insofar as Dollah intends to assert a claim pursuant to the APA, the SAC does not appear to plausibly allege that the Government's conduct was arbitrary or capricious—especially given the Government's policy-based explanations for its decisions, repeated efforts to communicate its policies and decisions to Dollah, and Dollah's choice to intentionally delay her bloodwork. *See e.g.*, SAC ¶¶ 10, 11, 15, 20, 21. Insofar as Dollah seeks to assert a claim for HIV-discrimination under the Fifth Amendment, she also fails to demonstrate that the Government's policy was facially discriminatory,[6] was applied in an intentionally discriminatory manner, or had an adverse effect and was motivated by discriminatory animus. *See Aguilar v. Immigration & Customs Enforcement*, 811 F.

---

[6] *See* Doc. 17-1 at 43 ("Presence of human immunodeficiency virus (HIV) or laboratory evidence of infection or false-positive screening test(s) with ambiguous results by supplemental confirmation test(s) is not, in itself, disqualifying with respect to covered personnel . . . ."); *see also Navy Recruiting Manual: Enlisted* at 2-76 ("Due to significant advances in the diagnosis, treatment, and prevention of HIV, the Office of the Under Secretary of Defense updated DoD policy regarding an HIV-positive individual. An individual has no restrictions for accession or commission into military service solely based on HIV-positive status.").

14

Supp. 2d 803, 819 (S.D.N.Y. 2011) (noting that "a plaintiff must allege facts showing one of [these] three things" to "plead a Fifth Amendment claim for discrimination"); *see, e.g.*, SAC ¶¶ 15, 20 (alleging that although the Navy originally denied her application due to her "physical examination report," the Navy later made substantial efforts to recruit Dollah with full knowledge of her HIV status). But the Court need not decide these issues because the complaint must be dismissed for lack of subject matter jurisdiction.

### B. Leave to Amend

In her opposition brief, Dollah requests leave to amend "to address any deficiencies identified by the Court" in her complaint. Doc. 36 at 1. However, the Government argues that amendment is futile and that any request for leave to amend should be denied. Doc. 37 at 2. Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In this case, the Court finds that amendment would be futile. The complaint has already been amended twice, and the jurisdictional issues within the complaint are substantial and cannot be remedied. The request for leave to amend the complaint is therefore denied.

## IV.   CONCLUSION

For the reasons set forth above, the Government's motion to dismiss is granted with prejudice.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 31, and close the case.

It is SO ORDERED.

Dated:   April 10, 2026
         New York, New York

EDGARDO RAMOS, U.S.D.J.